UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KENNETH DONAHUE,
                    Plaintiff,

                                      CIVIL ACTION

                                      NO. 15-499-JWD-RLB
VERSUS


ALONZO WILDER and COURTNEY CHANEY,
                    Defendants.


## ORDER ON FIRST AND SECOND MOTIONS TO DISMISS

## I.    INTRODUCTION

Before the Court is the Combined FRCP Rule 12(b)(6) Motion for Partial Dismissal for Failure to State a Claim Upon Which Relief Can be Granted, and FRCP Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction ("First MTD"), (Doc. 11), filed by Ms. Courtney Chaney ("Chaney"), and the Combined FRCP Rule 12(b)(6) Motion for Partial Dismissal for Failure to State a Claim Upon Which Relief Can be Granted, and FRCP Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Second MTD"), (Doc. 19), docketed by a second defendant, Doctor Alonzo Wilder ("Wilder"). To the First MTD, Mr. Kenneth Donahue ("Donahue" or "Plaintiff") responded with the Opposition to Combined FRCP Rule 12(b)(6) Motion for Partial Dismissal for Failure to State a Claim Upon Which Relief Can be Granted, and FRCP Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction ("First Opposition"), (Doc. 17).[1]

---

[1] A first such response was filed on September 18, 2015, (Doc. 15), but it was struck due to its

In their papers, Wilder and Donahue (collectively, "Defendants") advance two arguments to justify dismissal of the Plaintiff's complaint ("Complaint"), (Doc. 1), pursuant to Federal Rule of Civil Procedure 12.[2] First, Plaintiff's allegations do not state a plausible claim for relief on the basis of medical indifference in contravention of the United States Constitution's Eighth Amendment's prohibition on cruel and unusual punishment. Second, as Plaintiff, a prison inmate, has not yet received a formal rejection of the formal complaint submitted by him to the relevant entity, the Livingston Parish Detention Center ("LPDC"), a corrections institution within Louisiana's Department of Public Safety and Corrections, he has not yet exhausted his administrative remedies, a threshold prerequisite for suit in either federal or state court. Plaintiff disagrees, maintaining that the story told in the Complaint evidences the prohibited indifference and that exhaustion has been achieved by virtue of LPDC's inaction.

In light of the plausibility standard of review effected by Rule 12, this Court finds no merit in Defendants' contentions. Once Plaintiff's allegations are construed in his favor, the law's iron requirement, they sum up to a plausible claim for relief under the Eighth Amendment. To wit, Defendants' conduct, as described by Plaintiff in his pleading and the Opposition, could be said to reasonably evidence intentional refusal to provide essential medical care, their treatment so defective as to equate to forbidden indifference as defined in case after case. Moreover, based on the facts presented to this Court, Title 22 of Louisiana's Administrative Code[3] leaves no question about the fact that exhaustion has been effectively realized for, among

---

noncompliance with the local rules of the Middle District of Louisiana, (Doc. 16).

[2] In this opinion, any and all references to "Rule []" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[3] In this order, any and all references to "Section []" or "§ []" are to a section of the Louisiana Administrative Code.

other reasons, the crucial passing of ninety-one days.[4] As such, for these reasons, as more fully explained below, this Court DENIES the First and the Second MTDs.[5]

## II.   BACKGROUND

### A.   Factual Allegations[6]

In June of 2014, Donahue was an inmate at LPDC. (Doc. 1 at 3; *see also* Doc. 17 at 1.) That summer, Donahue "made [a] routine 'sick call' complaining of pain in his right food and [that his] . . . foot kept turning extremely cold and then back to warm," this condition worsening "to the point that he could not put weight on the right foot without serious pain." (Doc. 1 at 3; *see also* Doc. 17 at 1–2.) With "climbing" seemingly "impossible," Donahue was assigned to a lower bunk. (Doc. 1 at 3; *see also* Doc. 17 at 2.) In the ensuing months, as Plaintiff continued to repeat these same complaints, he was examined and treated by Chaney, Wilder, and a third nurse, Ms. Shelly ("Shelly").[7] (Doc. 1 at 3–4; *see also* Doc. 17 at 2.) When he first showed Shelly his "blistering" toes and his inability to place weight upon his right foot, she authorized his bottom bunk restriction. (Doc. 1 at 3; *see also* Doc. 17 at 1–2.) Later, while Chaney was beside him, her role unclear, Wilder initially "glanced at . . . [Plaintiff's] foot and found . . . no problem"; hence, Wilder prescribed ibuprofen. (Doc. 1 at 4; *see also* Doc. 17 at 2.) After a second sick call, in which "blood blisters had formed on the bottom of . . . [Donahue's] toes" and sleep proved impossible, Wilder "explained that there was nothing he could do and sent . . .

---

[4] *See infra* Part III.B.

[5] Notably, Wilder sought permission to file a third motion to dismiss. (Doc. 37.) This request was denied. *See infra* Part II.B.

[6] For purposes of Rule 12, this Court treats the Complaint's allegations as true. Of course, they may later prove to be more fictional than factual.

[7] Shelly is not a named defendant. (*See* Doc. 1.)

[Donahue] back to his room." (Doc. 1 at 4; *see also* Doc. 17 at 2.)

This pattern continued unchanged. Plaintiff would complain, and Wilder and Chaney would insist "that there was nothing wrong with his foot," purportedly telling Donahue that "he had athlete[']s foot and that his foot was like that because he was working out" and urging him to take his ibuprofen. (Doc. 1 at 4; *see also* Doc. 17 at 2–3.) Meanwhile, Donahue's condition seemingly worsened, as his toes "turned purple and were cold to the touch," leading Plaintiff to "cr[y] due to the severe pain." ((Doc. 1 at 4; *see also* Doc. 17 at 2–3.) Accordingly, another request to see a doctor was made, but it too was denied "on the basis that in . . . [the nurses'] opinions 'there is nothing wrong with your foot.'" (Doc. 1 at 4.) A subsequent complaint did lead Chaney to act, however, but "rather than call[ing] the [p]arish [d]octor, . . . [she] pulled out a small pair of scissors and cut the blisters and bandaged them, which worsened the serious medical condition." (*Id.* at 5.) Later, when Defendant complained "that he had no circulation in his toes and that something was seriously wrong with his foot," Wilder ordered an x-ray and bloodwork, no break indicated. (*Id.*) In November 2015, Donahue again asked to see a doctor. (*Id.*) Once more, Wilder advised him "that he could not do anything." (*Id.*) Still, he arranged for Plaintiff's removal to another facility without otherwise modifying Donahue's treatment. (*Id.*)

Transferred that day, Donahue was seen by a new doctor, who, having made a diagnosis, had Donahue shipped to Elayn Hunt Correctional Center ("Hunt") for medical treatment. (*Id.* at 5–6.) Within a week, Donahue's toes had fully blackened, leading him to pronounce "a self-declared medical emergency." (*Id.* at 6.) Sent to the emergency room at River's Hospital, the doctor there informed Donahue "that his toes were dead." (*Id.*) Plaintiff was subsequently transported to University Health Shreveport, where the "toes on his right foot were surgically removed and stints were placed in both sides of his lower area." (*Id.*) Eventually, Donahue

landed again at Hunt, still enduring "considerable pain" and undergoing unspecified "treat[ment]." (*Id.*)

In November 2014, while he was still housed in LPDC, Defendant formally protested of his treatment by Chaney and Wilder via a written complaint ("ARP"). (*Id.* at 1.) LPDC, however, never responded. (*Id.*) When he arrived at Hunt, Donahue filed a second ARP based on this same alleged misconduct. (*Id.*) Hunt rejected this second attempt, explaining that "an ARP must [seemingly] be filed with the facility where the injury occurred." (*Id.* at 1–2.) Adhering to these instructions, in April 2015, Donahue and his counsel mailed this second ARP to LPDC "with a request that it be processed." (*Id.* at 2.) Once more, LPDC "failed to respond."[8] (*Id.*)

### B.   Procedural Background

The Complaint was filed on July 31, 2015, (*Id.*), more than ninety (90) days after April 30, 2015.[9] The First MTD was docketed on September 3, 2015. (Doc. 11.) The Opposition came on September 21, 2015. (Doc. 17.) Wilder tendered the Second MTD on October 9, 2015. (Doc. 19.) A hearing on these motions was twice rescheduled. (Dos. 33, 36.) This hearing was set for February 11, 2016, at 1:30 p.m., Central Standard Time. (Doc. 36.) Thereafter, on February 2, 2016, Wilder submitted the Defendant's Motion for Leave to File Amended Motion to Dismiss and Memorandum of Law in Support. (Doc. 37.) Mirroring the First and Second MTDs, this Court denied this motion on February 3, 2016. (Doc. 38.) The hearing originally set to take place on February 11, 2016, was vacated on February 5, 2016. (Doc. 39.)

---

[8] Whether LPDC has done so in the months since the Complaint's filing is not known to this Court.

[9] With the end date, the gap was ninety-four (94) days.

**C.     Pertinent Arguments**

Read together, linked in logic and in interest, the First and Second MTDs raise identical arguments for dismissal of the Complaint, (Doc. 1). According to both Defendants, this document fails to state a cognizable federal cause of action for two reasons. First, the Complaint's allegations, once subjected to the plausibility standard lodged in Rule 8 as presently construed, establish the existence of nothing but simple negligence in diagnosis and treatment. (*See, e.g.*, Doc 11 at 1; Doc. 11-1 at 4; Doc. 19-1 at 1, 3–4.) As a matter of well-settled law, such claims cannot constitute the kind of medical indifference necessary to sustain Plaintiff's claim of cruel and unusual punishment in violation of the Eighth Amendment. (*See, e.g.*, Doc 11 at 1; Doc. 11-1 at 4; Doc. 19-1 at 1, 3–4.) Second, because Louisiana law requires claims like Plaintiff's to first exhaust the state's established administrative review procedure and because Plaintiff has not yet received a response from LPDC regarding his ARP, his claim is not yet ripe, his remedies not yet exhausted. (*See, e.g.*, Doc 11 at 1–2; Doc. 11-1 at 5–6; Doc. 19-1 at 1, 4–6.) Under certain law, however, such exhaustion must occur before a suit in any federal tribunal, including this one, can be maintained. (*See, e.g.*, Doc 11 at 1–2; Doc. 11-1 at 5–6; Doc. 19-1 at 4–6.) The first failing compels dismissal under Rule 12(b)(1), Defendants contend. (*See, e.g.*, Doc. 11-1 at 5–6; Doc. 19-1 at 5–6.) The second failing compels dismissal pursuant to Rule 12(b)(6), they add. (*See, e.g.*, Doc. 11-1 at 5–6; Doc. 19-1 at 5–6.) Regardless of the applicable paragraph, the Complaint must fall.

**III.    DISCUSSION**

**A.     Governing Law**

*1.     Rule 12(b)*

Rule 12(b) allows for dismissal of a complaint for, among other matters, "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). For purposes of this rule, "[t]he content of the complaint is the only material to be considered . . . . in alleged fact and applicable law." *Duke & King Acquisition Corp. Liquidating Trust v. Nath Cos. (In re Duke & King Acquisition Corp.)*, 508 B.R. 107, 115 (Bankr. D. Minn. 2014). When confronted with a motion to dismiss presented pursuant to Rule 12(b)(6), a court must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citing *Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir. 2009)); *accord Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Nonetheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 126 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007); *see also Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015). At present, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555; "the plaintiff must plead enough facts to state a claim to relief that is plausible on its face," *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.),* 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). A claim has this requisite "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (citing *id.*). The Supreme Court has further cautioned: "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); *see also United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014) (quoting *id.*). Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*, 556 U.S. at 678.

Rule 12(b) also allows for dismissal when a court lacks "subject matter jurisdiction." FED. R. CIV. P. 12(b)(1). In contrast with the constraints imposed on a court's consideration under Rule 12(b)(6), factual challenges to the existence of subject-matter jurisdiction under Rule 12(b)(1) allow a court to consider "matters outside the pleadings, such as testimony and affidavits." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Generally, a court may consider any of the following in order to rule on a Rule 12(b)(1) motion: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008). However, "[w]hen a complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff." *Legacy Wireless Servs. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1048 (D. Or. 2004). With jurisdiction so critical, a plaintiff, never the movant, always bears the burden of demonstrating jurisdiction. *See, e.g.*, *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

2. *Medical Indifference under the Eighth Amendment*

To state a claim under Section 1983 of Title 42 of the United States Code, a plaintiff must

allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). In *Estelle v. Gamble*, the Court held that "deliberate indifference to serious medical needs of prisoners" constituted the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment, wholly actionable under Section 1983. 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). Critically, as Defendants correctly point out, "an inadvertent failure to provide adequate medical care" does not amount to a constitutional violation; "[m]edical malpractice," if predicated on pure negligence, "does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also, e.g.*, *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991) (quoting *id.*); *Rodrigue v. Grayson*, 557 F. App'x 341, 344 (5th Cir. 2014) (same). Instead, the operative test requires deliberate indifference on the part of the prison officials and that the prisoner's medical needs be serious. *Monmouth Cnty. Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987).

Per this standard, if "a prisoner allege[s] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" by, for example, showing that "prison guards . . . intentionally den[ied] or delay[ed] access to medical care," he or she has indeed stated a cognizable claim under Section 1983. *Estelle*, 429 U.S. at 105, 106; *see also Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). True, "evidence which shows only that an inmate disagrees with a diagnosis or the course of treatment selected for him is [inherently] not sufficient." *Little v. Lycoming Cnty.*, 912 F. Supp. 809, 816 (M.D. Pa. 1996) (quoting *Estelle*, 429 U.S. at 105–06). Conversely (and logically), evidence that prison officials provided no treatment despite their own

medical staff's diagnosis or professional judgment may be, depending on the evidence's severity. As the Fifth Circuit has explained, refusing to "treat" a prisoner, "ignoring his complaints," "intentionally treat[ing] him incorrectly, or engag[ing] in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" trigger such liability. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Hence an intent to harm or animus towards a particular inmate is not itself required so long as such reckless disregard for his or her medical needs, whether it takes the form of deliberate mistreatment or disregard for his or her verifiable complaints (and sickly state), can be shown. *See, e.g.*, *Bouchereau v. Gautreaux*, No. 14-805-JWD-SCR, 2015 U.S. Dist. LEXIS 121225, at *19–20, 2015 WL 5321285, at *7 (M.D. La. Sept. 11, 2015) (summarizing prevailing case law regarding the Constitution's medical indifference standard); *Lanzaro,* 834 F.2d at 346 ("Where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to 'undue suffering or the threat of tangible residual injury' . . . deliberate indifference is manifest." (internal citations omitted)); *Ancata v. Prison Health Servs.,* 769 F.2d 700, 704 (11th Cir. 1985) ("The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference."); *Ramos v. Lam,* 639 F.2d 559, 575 (10th Cir. 1980) ("Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment.").

In undertaking such complex analyses, courts have focused on five questions: how serious was the prisoner's need for medical attention? Has the alleged medical need been confirmed by a health care professional? Did the prisoner request any medical treatment and, if so, did he or she receive treatment that addressed his need? Was the treatment rendered adequate? If the prisoner did not receive any treatment or only inadequate treatment, what was

the subjective motivation of the responsible prison official for denying or delaying medical treatment? Damon Martin, Comment, *State Prisoners' Rights to Medical Treatment: Merely Elusive or Wholly Illusory?*, 8 BLACK L.J. 427, 433 (1983). As these questions suggest, "[a] claim against prison officials and/or prison medical professionals for failure to provide medical care is 'fact-intensive and . . . require[s] . . . development of the record' and a 'conclusory assessment essentially disregards [a] [plaintiff's] allegations.'" *Randolph v. Wetzel*, 987 F. Supp. 2d 605, 624 (E.D. Pa. 2013) (alterations in original) (quoting *Leamer v. Fauver*, 288 F.3d 532, 547 (3d Cir. 2002)).

3.  *Exhaustion under State Law*

As commonly construed, Louisiana law requires even prisoners to submit their medical malpractice claims to the correctional administrative review procedures established for such hearings in a correctional environment. *Walker v. Appurao*, 2009 0821 (La. App. 1 Cir. 10/23/09); 29 So. 3d 575, 576–77 (interpreting LA. R.S. § 40:1299.39(E)(1)); *accord, e.g.*, *Jackson v. State*, 2011 1716 (La. App. 1 Cir. 03/23/12); 92 So. 3d 391, 395; *see also Ellis v. Sylvester*, 2010 1260 (La. App. 1 Cir. 02/11/11); 2011 La. App. Unpub. LEXIS 60, at *8–9, 2011 WL 766942, at *3. The administrative remedy procedure applicable to offenders, in turn, is set in § 325 of the Louisiana Administrative Code. Pursuant to § 325(F)(3)(a)(viii), "[p]rior to filing a grievance in federal or state court, unless specifically excepted by law, the offender must exhaust all administrative remedies." LA. ADMIN. CODE § 22:I.325(F)(3)(a)(viii). Such exhaustion occurs when one of three events has come to pass: (a) "when the relief requested has been granted"; (b) "when the second step response has been issued"; or (c) "when the grievance has been screened and rejected for one of the reasons specified in Subsection I, Grievance Screening." *Id.* §

22:I.325(F)(3)(a)(viii)(a)–(c); *Anderson v. Wilkinson*, No. 1:10-CV-00063, 2014 U.S. Dist. LEXIS 33571, at *8 (W.D. La. Feb. 12, 2014). Phrased in the disjunctive, any of the foregoing equates to exhaustion. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 116 (2012).

This process begins when an offender "complet[es] a request for administrative remedy or writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought." LA. ADMIN. CODE § 22:I.325(G)(1)(a)(i); *Robinson v. Martin*, No. 11-cv-1640, 2015 U.S. Dist. LEXIS 131070, at *5, 2015 WL 5697254, at *2 (W.D. La. Mar. 23, 2015). The warden must "respond to the offender within 40 days/5 days for PREA from the date the request is received at the first step utilizing the first step response." LA. ADMIN. CODE § 22:I.325(J)(1)(a)(ii). Thereupon, "[a]n offender who is dissatisfied with the first step response may appeal to the secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP screening officer within five days of receipt of the decision." *Id.* § 22:I.325(J)(1)(b)(i). At this second step, a response must be made within a "time limit" of 45 days. *Id.* § 22:I.325(J)(1)(b). As allowed under subparagraph (viii), an offender "not satisfied with the second step response . . . may file suit in district court." *Id.* § 22:I.325(J)(1)(b)(iv).

Critically, this system specifies a timespan for responses—"No more than 90 days from the initiation to completion of the process shall elapse, unless an extension has been granted"—and punishes any greater delay: "Absent such an extension, expiration of response time limits shall entitle the offender to move on to the next step in the process." *Id.* § 22:I.325(J)(1)(c).

**B.     Application**

Based on the foregoing law, this Court has no option but to deny both MTDs.

While Defendants characterize Plaintiffs' medical indifference allegations as "in actuality claims of negligence in the diagnosis and/or treatment of [P]laintiff," (Doc. 19-1 at 1), and as "nothing more than the kind of naked assertions devoid of further factual enhancement prohibited by *Ashcroft*," (Doc. 11-1 at 4), the facts alleged, if assumed true, readily satisfy the Eighth Amendment's stringent medical indifference standard. According to Plaintiff, he could place no weight upon his toes, and his condition consistently worsened during the summer and fall of 2014, resulting in an increasing collection of blisters and pain-filled nights. (Doc. 1 at 3–6; *see also* Doc. 17 at 2–4.) For these supposed afflictions, which Wilder allegedly described as athlete's foot and Chaney as nothing at all, Wilder purportedly prescribed ibuprofen, insisting "that there was nothing wrong with his foot," and Chaney cut and bandaged his blisters, seemingly "worsen[ing his] . . . serious medical condition." (Doc. 1 at 4; *see also* Doc. 17 at 2–3.) Thus, Defendants either diagnosed Plaintiff's gangrene as athlete's foot or evaded his requests for more comprehensive treatment by insisting on their inability to help; stated differently, they either deliberately treated him incorrectly or disregarded the validity of his ever more desperate complaints. (Doc. 1 at 4; *see also* Doc. 17 at 3–4.) Eventually, a doctor diagnosed him with gangrene, his toes "dead" partly due to months of non-treatment. (Doc. 1 at 4; *see also* Doc. 17 at 4.)

Assumed true for Rule 12(b)'s limited purposes, these allegations would establish that Defendants ignored Plaintiff's well-founded complaints or intentionally treated him incorrectly. Having chosen to disregard his growing concern (and darkening toes) and to respond to a worsening physical condition with the same medicinal regimen or unvarying inaction, they "evince[d] a wanton disregard for . . . [his] serious medical needs." *Gobert*, 463 F.3d at 346.

Though gangrene can seemingly be treated if caught early and be detected by any number of medical tools, including blood tests, cultures, imaging tests, and surgery, Chaney cut Donahue's blisters, and Wilder gave him ibuprofen and a single scan for a bone break. As a matter of clear law, such conduct, lasting several months, could be found to have run afoul of the Eighth Amendment, *see Davis v. Thomas*, 615 F. App'x 240, 241 (5th Cir. 2015) (citing *id.*), for "[the] infliction of pain" upon Plaintiff could be reasonably seen as both "unnecessary and wanton," *Gessa v. LeGrand*, 612 F. App'x 784, 785 (5th Cir. 2015). They are not, simply put, naked assertions or conclusory assertions, as Defendants repeatedly contend, (Doc. 11-1 at 4; Doc. 19-1 at 1, 4),[10] but something far more substantial, adding up to a plausible medical indifference cause of action. Of course, Defendants, most especially Wilder, did not categorically refuse to treat Plaintiff, (*See, e.g.*, Doc. 37-1 at 7–8), but deliberately defective treatment will also contravene the Eighth Amendment, *see, e.g.*, *Gessa*, 612 F. App'x at 785. With the Constitution offended whenever a doctor "refuse[s]" to treat an inmate, "ignore[s] his complaints," "intentionally treat[s] him incorrectly," *or* "engage[s] in any similar conduct that would clearly evince a wanton disregard for any serious medical needs," *Anderson v. Stephens*, 609 F. App'x 217, 218 (5th Cir.) (quoting *Gobert*, 463 F.3d at 346), and Plaintiff having assembled allegations' cumulatively indicative of Defendants' indifference to a spreading (and diagnosable) infection,[11] the Complaint meets the bare minimum set in Rule 8 and must thus be held to withstand Rule

---

[10] Indeed, Defendants' claims strike this Court as more ineffably conclusory. (*See* Doc. 11-1 at 4.) Having explicated the proper standard, they simply "respectfully submit" that Plaintiff's claim are purely "conclusory" in character. (*See, e.g.*, *id.* at 4; Doc. 19-1 at 3–4.) The third motion to dismiss opts for the same formulation. (Doc. 37-1 at 7–8.)

[11] Indeed, one doctor would recommend surgery upon seeing Plaintiff's foot. (*See* Doc. 1 at 6.) Whether such a recommendation should have been made by Wilder several months beforehand is not a question that this Court must answer.

12(b)(6), regardless of the veracity of Plaintiff's claims.[12]

Meanwhile, Defendants' contention that Plaintiff's present action is barred by operation of Louisiana's Administrative Code, thereby compelling dismissal of the Complaint pursuant to Rule 12(b)(1), is predicated on an incorrect legal conclusion: that Plaintiff, who has not received a response for the ARP sent to LPDC in either August 2014 or April 2015, has improperly sought to invoke this Court's jurisdiction. In Wilder's words, "[s]imply pleading that the Livingston Parish Detention Center failed to respond is not enough to then file a lawsuit in Federal Court," (Doc. 19-1 at 4 (internal quotation marks omitted); *accord* Doc. 37-1 at 5–6); in Chaney's, "[h]is proper recourse would be to petition the appropriate Louisiana state court to order the correctional facility to institute the requested administrative review procedures," (Doc. 11-1 at 5).

This contention, however, cannot be squared with the explicit language of the very corpus of law upon which Defendants rely. Pursuant to § 22:I.325, the Plaintiff was entitled to file a "grievance in federal or state court" upon his remedies' exhaustion, and this pivotal moment occurred once LDCP failed to act upon his ARP at the second step within 45 days of its submission. LA. ADMIN. CODE § 22:I.325(F)(3)(a)(viii), (J)(1)(c). Having proceeded past the First Step, (Doc. 17 at 9), LDCP bore this duty per explicit regulation, LA. ADMIN. CODE § 22:I.325(J)(1)(b). When it did not do so, Plaintiff reaped the right to file suit in any state or federal tribunal, including this one. *Id.* § 22:I.325(F)(3)(a)(viii). In fact, on the ninety-first day after his ARP's initial filing, the so-called "First Step," Louisiana law granted him that prerogative. *Id.* § 22:I.325(J)(1)(c). Whether the relevant start date is the last day of November 2014 or the last minute of April 2015, (Doc. 17 at 8–9; *see also, e.g.*, Doc. 1 at 1–2), Plaintiff's

---

[12] Rule 56 would necessarily impel a different arithmetic. FED. R. CIV. P. 56.

right to sue would have arisen before the Complaint was docketed, (Doc. 1).[13] In sum, by operation of the law to which Defendants direct this Court's attention, the claims made in the Complaint have been administratively exhausted, affording this Court jurisdiction and defeating Defendants' Rule 12(b)(1) argument.

## IV. CONCLUSION

As written, the Complaint states a plausible claim for relief for medical indifference in contravention of the Eighth Amendment. Concurrently, the Complaint establishes this claim's exhaustion in accordance with Louisiana's Administrative Code, which automatically compels such a finding. Accordingly, this Court **DENIES** both the Combined FRCP Rule 12(b)(6) Motion for Partial Dismissal for Failure to State a Claim Upon Which Relief Can be Granted, and FRCP Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction, (Doc. 11), and the Combined FRCP Rule 12(b)(6) Motion for Partial Dismissal for Failure to State a Claim Upon Which Relief Can be Granted, and FRCP Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction, (Doc. 19).

Signed in Baton Rouge, Louisiana, on February 10, 2016.

                                                            _____
                                                            **JUDGE JOHN W. deGRAVELLES**
                                                            **UNITED STATES DISTRICT COURT**
                                                            **MIDDLE DISTRICT OF LOUISIANA**

---

[13] If this Court uses the latest possible date, i.e. April 30, 2015, that right came into being on July 29, 2015. The Complaint was filed two days later. (Doc. 1.)